AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Indiana

| United States of America | ) |
|---|---|
| v. | ) Case No. **SEALED** |
| SHEPHERD HOEHN | ) 1:20-mj-0625 |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  6/18/2020-7/1/2020  in the county of  Marion  in the  Southern  District of  Indiana , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 42 USC § 3631 | Criminal Provision of the Fair Housing Act |
| 18 USC § 922(g)(2) | Possession of a Firearm by a Fugitive of Justice |
| 18 USC § 922(g)(3) | Possession of a Firearm by One Who is an Unlawful User of or Addicted to Any Controlled Substance |

This criminal complaint is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

s/ Chelsea Wesley
*Complainant's signature*

Chelsea Wesley, Special Agent/FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by  telephonic communication  *(reliable electronic means)*

Date:  July 31, 2020

*Doris L. Pryor*
United States Magistrate Judge
Southern District of Indiana

City and state:  Indianapolis, IN

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT, ARREST WARRANT, AND SEARCH WARRANT

I, Chelsea Wesley, being duly sworn according to law, depose and state as follows:

### INTRODUCTION

1. I am and have been employed as a Special Agent with the Federal Bureau of Investigation ["FBI"] since October 2019. Prior to that time, I spent 21 weeks training to be a Special Agent at the FBI Academy in Quantico, Virginia beginning on October 27, 2019. Through the FBI, I have received training related to the investigation of federal crimes to include civil rights violations, violent crime, and firearms offenses. I am currently assigned to the FBI Public Corruption and Civil Rights Squad in the Indianapolis Field Office of the FBI.

2. This affidavit is submitted in support of an application for a Warrant for the Arrest of SHEPHERD HOEHN ["HOEHN"], white male, date of birth XX-XX-1970, social security account number ["SSAN"] XXX-XX-4492. Based on my training and experience, and based on the facts set forth below, there is probable cause to believe that the HOEHN committed the following criminal offenses:

   a. On or about June 18, 2020, HOEHN did by force and threat of force, willfully intimidate and interfere with, and attempt to intimidate and interfere with, MS., an African-American man, because of MS's race and color and because MS was occupying a dwelling; specifically HOEHN (1) created and displayed a swastika on a fence facing MS's property; (2) placed and burned a cross above the fence line facing MS property; (3) created and displayed a large sign next to the swastika containing a variety of anti-Black racial slurs; (4)

  visibly displayed a machete near the sign; (5) loudly played the song "Dixie" on repeat; and (6) threw eggs at MS's house, all in violation of Title 42, United States Code, Section 3631 (Fair Housing Act).   The elements of that charge are as follows:

| | |
|---|---|
| First: | The defendant used force or threat of force; |
| Second: | The defendant acted because the victim (or someone associated with the victim) was enjoying or exercising an enumerated housing right (such as buying, selling, renting, or – most typically – occupying a dwelling). |
| Third: | The defendant acted on account of the race, color, sex, religion, disability, family status, or national original of any person, **AND** On account of the victim [or other person's] enjoyment or occupancy of a dwelling; and |
| Fourth: | The defendant acted willfully. |
| Fifth: | The defendant did use fire in the commission of the offense. |

b. On or about July 1, 2020, HOEHN was found to be in unlawful possession of seven firearms. Your Affiant knows that in 1991 HOEHN was charged by felony Information with Stealing.  HOEHN pled guilty to the charge, but then failed to complete his term of probation, and has been a fugitive of justice since 1993 in Dunklin County (Missouri) Superior Court cause number 350391001185F. Information presented in this affidavit also indicates HOEHN is an unlawful user of, and/or addicted to, a controlled substance.  As a result, there is probable cause to believe HOEHN is in violation of Title 18,

United States Code, Sections 922(g)(2) (possession of a firearm by a fugitive from justice) and (g)(3) (possession of a firearm by one who is an unlawful user of or addicted to any controlled substance).

3. This affidavit is also submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search HOEHN's residence, located at **6411 Meadowfield Blvd, Indianapolis, IN 46235 ("TARGET ADDRESS")**, a property in the Southern District of Indiana. Based on my training and experience, and based on the facts set forth below, there is probable cause to believe that the aforementioned residence (identified in Attachment A), contains evidence, as more fully identified in Attachment B, of violations of federal law, including, but not limited to, Title 18, United States Code, Section 922(g)(3) (possession of a firearm by one who is an unlawful user of or addicted to any controlled substance).

4. The information contained in this affidavit is based on my personal knowledge, as well as information obtained from documents, electronic databases, and witnesses, and information conveyed to me by other law enforcement officers involved in this investigation. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. I have not included each and every fact that has been revealed through the course of this investigation.  I have set forth only the facts that are believed to be necessary to establish the required foundation for this issuance of the requested Warrant for Arrest and Search.

## BACKGROUND OF THE INVESTIGATION

6. HOEHN, a white male, lives at 6411 Meadowfield Blvd, Indianapolis, IN. HOEHN's property is on the corner of Meadowfield Blvd and is partially adjacent to a small

triangle of vacant property where the road curves. MS, a black male, lives next door to HOEHN; his property is just on the other side of where Meadowfield Blvd curves, and is partially adjacent to the same vacant triangle of property that HOEHN's property touches. The southwest corner of HOEHN's property abuts the northwest corner of MS's property, and the vacant triangle of property fills the space between the properties where the road curves. HOEHN's property is partially surrounded by a wooden fence, and there is a clear, direct and unobstructed view of HOEHN's fence line from MS's property.

7. Beginning at approximately 9:30 a.m., on or about June 18, 2020, a construction crew began working at the direction of MS to remove a tree from MS's property. Upon learning of the tree removal, HOEHN became angry and took several steps to intimidate and interfere with MS and the construction workers. Specifically, HOEHN (1) created a swastika from reflective duct tape and placed it on the outer side of his fence, facing MS's property and the construction workers; (2) placed and burned a cross above the fence line, facing and in full-view of MS's property and the construction workers; (3) created and displayed a large sign next to the swastika containing the words "water lip," "blue gum," "porch monkey," "spook," "darky," "smoke," "coon," "jimbo," "jimmy," and "sambo;" (4) visibly displayed a machete near the sign and swastika; (5) loudly played the song "Dixie" on repeat;[1] and (6) threw eggs at MS's house. These activities are referred to hereafter as "The Event." A more complete recitation of The Event is contained in the affidavit in support of an application for a search warrant in cause number 1:20-mj-00525, which was signed by the Hon. Tim A. Baker on June 30, 2020.

8. Lawrence Police Department ("LPD") officers interviewed several of the construction workers who were present and working during The Event. None of the workers was

---

[1] "Dixie" was a popular song in the Southern states that became widely associated with the Confederacy.

able to identify HOEHN from a photo lineup, in part because the man they observed wore a generic face mask (like those worn for protection against COVID-19) during portions of The Event. However, each worker described actions taken by a middle-aged white male who repeatedly went in and out of HOEHN's home. HOEHN is a 50-year-old white man and is the only male that resides on the property. Based on interviews, photos, and the investigation to date, I believe each of the workers observed HOEHN perpetrate The Event.

9. HOEHN was interviewed by LPD on June 19, 2020, and again by the FBI prior to the execution of a federal search warrant at his home on July 1, 2020. Both interviews were recorded. During both interviews, HOEHN admitted to perpetrating The Event and discussed his motivations for his actions. In both interviews, HOEHN claimed that he was not a racist, that his actions were protected by the First Amendment, and that he did not intend to threaten anyone. He explained that he became very angry when he learned that MS was intending to cut down a tree in MS's yard. Hoehn stated that he took the actions described as The Event because he wanted to upset MS and make MS feel miserable. In both interviews HOEHN acknowledged that he was aware of the specific racial connotations of his actions, that he knew his actions would be disturbing to MS because MS was black, and that he took such actions with the intention of evoking an emotional response in MS. Based on my training and experience, I believe that the statements HOEHN made to LPD and to the FBI demonstrate that HOEHN took these actions because he was upset by what MS was doing on MS's property, and that HOEHN chose specific racial symbols and words because MS was black, and because he knew that, as a result of MS being black, the words and symbols would cause a strong emotional response from MS.

10. For example, during the FBI interview, HOEHN was asked why he chose to play the song "Dixie," and he responded:

5

> *SH: Because he's a black man. And I wanted them to be pissed off because they think I'm a racist, and I'm doing something stupid and ignorant.*

11.     During the FBI interview, HOEHN admitted to making the sign with anti-black racial slurs written on it. He explained that he chose those specific slurs because, according to him, they had multiple meanings, and stated that he intentionally avoided using a specific word that he viewed as being solely a racial slur with no other dual meaning. HOEHN nevertheless recognized that the words and symbols he used could be viewed as racist, and admitted that his objective was to anger and upset MS.

> *FBI: Okay. What did you think he was going to see when he saw them?*
>
> *SH: I don't care. I wanted to piss him off. I wanted to make him miserable.*
>
> *FBI: Okay.*
>
> *SH: I wanted to make him angry and upset, and psychotically* [sic], *just, I just wanted to make him miserable.*

12.     During the FBI interview, HOEHN also admitted to burning a cross above the fence line facing MS's property. He said that he was unaware that burning a cross was considered a threat, but he also clearly acknowledged that he knew that the action of burning a cross had racial implications connected to the Ku Klux Klan ("KKK"), and that the imagery of a burning cross "evokes a response." HOEHN explained that, like the placement of the swastika and the sign containing anti-black racial slurs, burning the cross was intended to provoke an emotional reaction from MS and his neighbors.

13.     Throughout LPD's interview of HOEHN, HOEHN described being angry that MS was cutting down a tree in MS's yard, even though he acknowledged that MS had a right to do so.  He maintained the same general position in his subsequent FBI interview.  He described the

fact that MS was a black man as a "perfect opportunity," and admitted to taking the actions described as The Event:

> *SH: Okay, people think that I was threatening the tree crew. Absolutely not. Alright, when I threw eggs at this guy's house, which I did, I'll freely admit it. I'll pay a fine, I'll clean his damn house, alright. I was angry. That's right on the edge of what's acceptable, Okay. I know. I'm not gonna assault anybody. Alright. I'm not, I'm, Okay, he had the right to cut his tree down. I have the right to be angry about it. Yes, that's the edge of what's considered, assault. I understand that. If I'd a had to go to jail for that ridiculous shit, I would have. The fine wouldn't have been anything big. I'm not gonna threaten a guy, alright. He's a black man. Perfect opportunity, alright. So yes. I wrote a bunch of racial slurs on a piece of board an put 'em out there.*

14. HOEHN also made statements during the FBI and LPD interviews demonstrating that, in addition to his anger about the tree, his actions were also motivated by a desire to express opposition to certain current events, such as Black Lives Matter protests and efforts to remove statues throughout the country. He explained that his actions were motivated by several sources of frustration and anger that all came to a head when MS began removing his tree.

15. Based on my training, experience, and investigation so far, I believe that HOEHN's statements, taken together, suggest that he took the aforementioned actions during The Event in order to intimidate and interfere with MS because of MS's race and because of MS's use, enjoyment, and occupation of MS's own property. As HOEHN acknowledged in his statements, he knew that MS had the "right" to cut down a tree on his own property. Based on my investigation, I believe that there is probable cause to believe that HOEHN's actions were intended to intimidate and interfere with MS's exercise of that right.

16. During both the LPD interview and the FBI interview, HOEHN acknowledged that he knew his actions would cause his neighbors to be afraid. Although at certain points he claimed that he had not intended his actions to be threatening or frightening, he acknowledged knowing that his neighbors would feel fearful as a result of what he did, and at one point stated, "I realize that what I was doing was disturbing." HOEHN explained that he knew his actions would cause an "emotional response" in MS, and that he took those actions because he wanted MS to feel the same kind of emotion and anger that HOEHN felt when he learned MS was removing the tree. During the FBI interview, HOEHN specifically discussed a conversation he had with his female neighbor, and stated that he knew how his actions during The Event would make neighbors feel, saying, "That's why I fucking did it."

17. During the FBI interview, HOEHN admitted placing a machete near the swastika and the sign with anti-black racial slurs and described the action as a "subtle threat."

18. After obtaining a warrant that authorized the search of HOEHN's home and electronic devices, including specifically authorizing a search of the content of HOEHN's mobile phone, the FBI seized and is currently in the process of reviewing HOEHN's mobile phone. A preliminary review of text messages on the phone revealed a series of text messages between HOEHN and the user of a telephone number ending in 6285. In those text messages, HOEHN wrote about The Event and described his motivations for his actions. HOEHN explained that he "took an opportunity" to voice his opinion about MS and MS's tree removal, as well as the general state of the country. The texts are generally consistent with his statements during the FBI and LPD interviews.

19. In sum, although HOEHN consistently stated that he is not racist, he acknowledged that he knew his actions and the words and symbols he used would be viewed as

having specific and offensive racial connotations, and acknowledged that he knew his actions would cause MS and others to be fearful.

20. Based on the foregoing, I submit that there is probable cause to believe that HOEHN used or attempted to use force or threat of force to willfully intimidate or interfere with MS because of MS's race or color, and because of MS's use, enjoyment or occupation of MS's property, in violation of Title 42, United States Code, Section 3631 (Fair Housing Act).

### Possession of Firearms

21. During the execution of a federal search warrant on July 1, 2020, the FBI located and seized seven firearms. None of the firearms were manufactured in Indiana, which means that each of the firearms traveled in interstate commerce to be found in Indiana on July 1, 2020. Further, at least three firearms were received after 1993. The following firearms were seized from HOEHN's bedroom and closet:

| Manufacturer | Model | Caliber | Status |
|---|---|---|---|
| SAR Arms | K2P (Pistol) | 9MM | Loaded |
| Western Auto | Revelation 76 (revolver) | .22 | Loaded |
| Stag Arms | Stag 15 (AR-15 Rifle) | .556 MM | Loaded |
| Browning | Sweet (Shotgun) | 16 GA | Unloaded |
| Unknown | Unknown (Shotgun) | 12 GA | Unloaded |
| Ithaca | 72 Saddlegun (Rifle) | .22 | Unloaded |
| Savage Arms | 93R17 (Rifle) | .17 | Loaded |

22. During the FBI interview, HOEHN admitted to possessing the firearms, stating:

> *SH: Oh, that's, sorry, that's, that's my pistol. Sorry* [referring to the SAR Arms pistol located on a bookshelf in his bedroom].
>
> *SH: She* [referring to a neighbor] *was upset because I have guns. I'm sure she probably thinks I have a mobile, air, surface to air missile, (UI) RPG's, there's no telling what she thinks I've got in this house. I've got quite a lot of firearms. Alright.*

23. As the FBI began to conduct the search of HOEHN's home, HOEHN located and identified many of the firearms listed in the paragraph above.

24. During the interview, HOEHN admitted that he had been convicted of a felony for stealing but stated that the conviction had been expunged in 1991 or 1992.

25. A criminal history of HOEHN from the National Crime Information Center ("NCIC") revealed an arrest for one felony count of "Stealing," case number 350391001185F, from Dunklin County, Missouri. A search of Casenet at www.courts.mo.gov, the publicly available website for Missouri Court records, revealed that HOEHN pled guilty to Stealing on December 27, 1991, in the same case. On March 11, 1992, HOEHN was given a suspended imposition of sentence and placed on three years of probation. Based upon the investigation, I believe that pursuant to Missouri law, a suspended imposition of sentence withholds final judgment and allows an offender to attempt to successfully complete a term of probation. If the offender successfully completes the term of probation, the felony conviction is dismissed and does not become part of the offender's permanent record. However, HOEHN did not successfully complete his term of probation. Sometime in 1993 (the month is cut off from the records received from the court), HOEHN violated his probation. Accordingly, his probation was suspended, and a warrant was issued for his arrest. The felony Information and warrant remain active. In other words, HOEHN remains charged by the 1991 felony Information in

Dunklin County, Missouri, and has been a fugitive on that charge with an active arrest warrant since 1993.

26.     On July 15, 2020, the Dunklin County, Missouri Circuit Court confirmed that on December 27, 1991, HOEHN pled guilty to a felony charge of Stealing (case number 350391001185F) and that there were no records of expungement or attempted expungement in the state of Missouri. Currently, the case remains open in the posture described above.

27.     According to Court documents and interviews with Court staff, the following is a chronology of the case.  HOEHN was charged with felony Stealing and taken into custody on or about December 2, 1991.  HOEHN pled guilty to that charge on December 27, 1991.  HOEHN remained in custody until March 11, 1992, at which point he was given a suspended imposition of sentence and placed on probation for three years.  Shortly thereafter, HOEHN's probation supervision was transferred to the State of Tennessee.  Upon relocating, HOEHN checked in for his initial interview with his Tennessee probation officer on April 14, 1992.  Tennessee's last contact with HOEHN was in February 1993.  HOEHN failed to report to a required meeting in March of 1993.  Attempts to locate HOEHN at his residence of record failed.  On April 29, 1993, a probation violation was mailed to HOEHN's last known address, but the letter was returned stating, "Return to sender, addressee no longer lives here."  A violation of his probation was filed in June 1993, and a warrant was issued for his arrest.  The Missouri Court also suspended his probation pending the violation hearing.  HOEHN has remained a fugitive with an active warrant since June 1993.

28.     According to information obtained from the National Instant Criminal Background Check System ("NICS"), HOEHN attempted and was denied approval to purchase a firearm on two specific occasions, once in Tennessee on or about November 2, 2006, for an

unknown reason, and again in Missouri on or about December 14, 2015.  The denial code for the December 14, 2015 was "922(g)(2)," fugitive.

### Unlawful Use of a Controlled Substance

29. During the FBI interview, HOEHN made several statements about his use of marijuana, even going so far as to state "I smoke pot. Heavily" and "So if you're going to arrest me for smoking pot, I mean, my paraphernalia is right here." Marijuana is a Schedule I controlled substance.

30. During the execution of the Federal Search Warrant at HOEHN's home, HOEHN's mobile telephone was seized and officers observed lights generally used to grow marijuana. Substantive text message communications, beginning on or about April 12, 2018, were retrieved from the phone. A review of the text messages revealed several conversations, beginning in 2018 and continuing until June 17, 2020, about the procurement and use of marijuana.  For example, on April 27, 2020, HOEHN had the following  conversation with cellphone user "M":

> SH: OK…..here's the deal…..of course I'm out. I get paid Thursday. Can you front another Q tonight, and I'll get ½ Z on Thursday and we'll even up…?
>
> SH: That would be a whole Z….total.
>
> SH: I wouldn't be this tight, but I just purchased a computer and a camper, and it's put me a little behind….
>
> SH: What are your thoughts on my other problem…?
>
> M: I'm a figure it out
>
> SH: Cool…..
>
> SH: Did you come up with a way to hep [sic] a junkie out…?
>
> M: I'm a have u meet me in a lil bit a the cemetery

> SH: Ok…I'll be ready. Will I need the equipment that was used last time…?

On June 17, 2020, HOEHN had the following conversation with cellphone user XXX-XXX-4602 ("4602"):

> 4602: I could hear you but barely… I have about 5000 seeds from granddaddy purple i need someone to start growing
>
> 4602: All good seeds i got them from my buddy's grow op he had a batch that a male snuck in
>
> 4602: All tigerstripe seeds big juicy bastards
>
> SH: Gee, what a coincidence….I know someone who would love to grow some ( and hes [sic] quite good at it ) but he needs some seeds…..I just wonder…..
>
> 4602: Ill bring them over right now if you want them
>
> SH: I want…you bring
>
> SH: We smoke
>
> 4602: Ill b there in about 45

31.    Based on my training and experience, HOEHN's statements during LPD and FBI interviews, and the evidence discovered during this investigation, I believe that there is probable cause to believe that HOEHN is an unlawful user of, or addicted to marijuana, a schedule I controlled substance, and is therefore prohibited from possessing firearms.  Additionally, there is also probable cause to believe that further evidence of HOEHN's unlawful drug use will be found at the TARGET LOCATION.

## LOCATION TO BE SEARCHED

32.    Based on my training and experience, and the facts as set forth in this affidavit, I believe that there is probable cause to search the residence of **SHEPHERD HOEHN**, at **6411**

**Meadowfield Blvd, Indianapolis, IN 46235,** for drugs and drug paraphernalia that is evidence of violations of Title 18, United States Code, Sections 922(g)(3) (possession of a firearm by one who is an unlawful user of or addicted to any controlled substance).

### REQUEST FOR NON-DISCLOSURE AND SEALING

33. The existence and scope of this ongoing criminal investigation is not publicly known. As a result, premature public disclosure of this affidavit or the requested warrant could alert potential criminal targets that they are under investigation, causing them to destroy evidence, flee from prosecution, or otherwise seriously jeopardize the investigation. In light of the nature of the crime under investigation, premature revelation of this investigation may alert the target that they have been identified by others and endanger the safety of witnesses who have been cooperating with the Government.

34. I respectfully request that this affidavit and all papers submitted herewith be maintained under seal until further order of the Court, except that the Government be permitted without further order of this Court to provide copies of the warrant and affidavit, as needed, to personnel assisting it in the investigation and prosecution of this matter, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

### CONCLUSION

35. Based on the information detailed above, I believe that there is probable cause that HOEHN violated of Title 42, United States Code, Section 3631, and Title 18, United States Code, Sections 922(g)(2) and (g)(3). Based on the foregoing, there is also probable cause to believe that a search of the TARGET LOCATION will reveal additional evidence relating to violations Title 18, United States Code, Sections 922(g)(3).

36.     Accordingly, I respectfully request the Court to issue a criminal complaint and arrest warrant charging HOEHN with those offenses, and a search warrant for **6411 Meadowfield Blvd, Indianapolis, IN 46235**, pursuant to the relevant provisions of Federal Rule of Criminal Procedure 41.

*/s/ Chelsea Wesley*
Chelsea Wesley, Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by <u>telephonic communications</u> (*reliable electronic means*)

Date: <u>July 31, 2020</u>



Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

## ATTACHMENT A

6411 Meadowfield Blvd, Indianapolis, IN – Home of Shepherd Hoehn

**SHEPHERD HOEHN**'s home is located at 6411 Meadowfield Blvd, Indianapolis, IN 46235. **SHEPHERD HOEHN**'s home is a single-story beige home with brick on the lower half of either side of the white double car garage door. The home is next to a vacant lot and has a large tree to the right of the front porch. A photograph of the house is below.



## ATTACHMENT B

### Particular things to be seized and searched

All items which contain evidence relating to violations Title 18, United States Code, Sections 922(g)(3) (possession of a firearm by one who is an unlawful user of or addicted to any controlled substance) involving SHEPHERD HOEHN, including, but not limited to, the following:

1) Any and all controlled substances; including, but not limited to,
   a) Marijuana

2) Drug paraphernalia; including, but not limited to,
   a) Bongs
   b) Pipes
   c) Needles
   d) Vape Pen, G-Pen
   e) Rolling paper
   f) Aluminum foil
   g) Scales
   h) Incense

3) Items used to grow marijuana; including, but not limited to,
   a) Seeds
   b) Pots
   c) Grow Lights
   d) Irrigation Systems
   e) Air Flow Systems,(exhaust, intake, air circulation)
   f) Environmental Controls, including items used to control humidity, temperature, $CO_2$, and light exposure)
   g) Fertilizer

4) Records related to the acquisition, cultivation, use, and sale of marijuana.